United States District Court
Southern District of Texas
**ENTERED**
June 28, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JPT GROUP, LLC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-3264 |
| | § | |
| STEVEN MADDEN RETAIL, INC., and | § | |
| STEVEN MADDEN, LTD., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to transfer venue to the United States District Court for the Eastern District of New York filed by defendants pursuant to 28 U.S.C. § 1404(a). Dkt. 15. After considering the motion, response, reply, and applicable law, the court finds that the motion should be DENIED.[1]

**I. BACKGROUND**

This is a patent infringement action brought under 35 U.S.C § 271 *et seq*. by JPT Group, LLC ("JPT") against Steven Madden Retail, Inc., and Steven Madden, Ltd. (collectively, "Madden"). Dkt. 1 at 2. JPT's principal place of business is located in Bend, Oregon and Madden's principal place of business is in Long Island City, New York. *Id*. at 2. JPT owns the Bernardo brand ("Bernardo"). *Id*. at 1. JPT alleges that Madden copied innovative designs of the Bernardo brand and engaged in production and distribution of infringing products through retail and online stores. *Id*. at 1–2. JPT was duly and legally issued U.S. Patent No. D577,182 (filed Nov. 16, 2007) (issued

---

[1] On March 23, 2016, JPT filed a motion for leave to file a sur-reply (Dkt. 22) in response to Madden's reply in support of their motion to transfer venue. However, even without considering JPT's sur-reply, the court finds that Madden cannot demonstrate that transfer of venue is warranted. Therefore, JPT's motion for leave to file a sur-reply is DENIED as moot.

Sept. 23, 2008) and U.S. Patent No. D581,149 (filed May 21, 2008) (issued Nov. 25, 2008) (collectively, "*Mojo* patents"). *Id.* at 3. The *Mojo* patents relate to the ornamental designs of the *Mojo* sandal, which is sold by JPT under its Bernardo brand. *Id.* The *Mojo* design was invented by Dennis Comeau, who currently resides in New Mexico. Dkt. 19 at 10. JPT alleges that Madden misappropriated JPT's patented ornamental sandal designs by manufacturing and distributing the accused products, including their *Virrtue Thong* sandals, throughout the United States, including Texas and New York. Dkt. 1 at 4.

JPT filed this lawsuit on November 5, 2015. Dkt. 1. On February 17, 2016, Madden moved to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). Dkt. 15. On March 13, 2016, JPT filed a response to the motion (Dkt. 19), to which Madden filed a reply (Dkt. 20).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987). The moving party bears the burden of showing why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). In evaluating a § 1404(a) motion to transfer, the court examines (1) whether the action "might have been brought" in the transferee forum, and (2) whether there is "good cause" for transferring the action. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).

To show good cause, the movant must demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* In determining whether transfer is appropriate, the court considers private and public interest factors. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.*

### III. ANALYSIS

Both parties agree that this case could have been brought in the Eastern District of New York. Dkt. 15 at 5; Dkt. 19 at 4. Madden contends that Texas and this court have no meaningful connection to this case and provides arguments for why the private and public factors weigh in favor of transferring the case. *See* Dkt. 15 at 8–16.

**A.     Public Factors**

Madden admits that three of the four public factors are neutral, and therefore, relies solely on the local interest factor to prove that the public factors weigh in favor of transfer. *See* Dkt. 15 at 13–16. The local interest factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004). Madden asserts that this case has a stronger factual connection with the Eastern District of New York because

Madden and JPT have "strong ties" to New York. Dkt. 15 at 14. Madden points out that they maintain their corporate headquarters and several stores in New York. JPT counters that Madden has only eighteen (18) stores located in New York, compared to 123 stores located in other states, including thirteen (13) stores in Texas. Dkt. 19 at 12, 17. Madden asserts that the only connection this case has to Texas is that some of the accused infringing products were sold in Texas. Dkt. 15 at 14–15. However, as Madden points out, these products were sold not only in Texas, but elsewhere throughout the United States, including New York. *Id*.

Madden asserts that the Bernardo Brand, owned by JPT, was founded in New York in 1946 and is headquartered in New York City. *Id*. JPT denies this assertion, claiming that the Bernardo website had previously contained outdated information and has since been amended to reflect that Bernardo's headquarters are no longer located in New York. Dkt. 19 at 12. In their reply, Madden points out that the Bernardo website still uses a New York showroom and boasts telephone area codes from New York and JPT's Facebook page still claims that "the [Bernardo] headquarters is based in New York." Dkt. 20 at 3–4; Dkt. 20, Exs. 2, 5. Regardless of the true location of its headquarters, Bernardo clearly has significant connections to New York.

Bernardo, however, also has strong ties to Texas. As JPT points out, current and former employees of Bernardo (and its predecessor companies) significantly contributed to the *Mojo* patents. Dkt. 15 at 20. The company that previously owned the *Mojo* patents, Bernardo Footwear, LLC, has been based in either Houston or Stafford, Texas since its inception in 2001. Dkt. 19 at 10. In 2007, when Bernardo Footwear, LLC filed the patent applications for the *Mojo* patents, its employees included: Roy R. Smith III, Cynthia Smith, Tim Hubbard, Pete Bottoni, and Tom Allen, all of whom currently reside within this district. *Id*. Moreover, Gilbreth & Associates, P.C. was the law firm that

prosecuted the *Mojo* patents. Dkt. 19 at 10. This firm was based in Houston at the time, and is currently located within this district in Bellaire, Texas. *Id*. In 2011, Bernardo Group, LLC acquired the Bernardo brand and the *Mojo* patents. *Id*. On February 11, 2014, JPT acquired the Bernardo brand and *Mojo* patents. *Id*. at 11. During this aforementioned time period, the officers and employees of the Bernardo Group included: Peter Cooper, Todd Miller, Tim Hubbard, John Moore-Jones, Kerri Woodard, Pete Bottoni, and Tom Allen. *Id*. Each of these individuals resides within this district. *Id*. These non-party witnesses managed and/or administered the sale of the *Mojo* sandals, witnessed Madden's alleged infringement of the *Mojo* sandals, and are knowledgeable about the patented design, marking, prior art, and damages. *Id*.

Because both venues have a strong local interest in this lawsuit, this court finds that the local interest factor is neutral. Accordingly, the court finds that none of the public interest factors weighs in favor of transfer.

**B.    Private Factors**

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

1.    *Relative Ease Of Access to Proof*

"'In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

Madden argues that their corporate headquarters and most, if not all, of Madden's relevant documents concerning the accused products are maintained in New York. Dkt. 15. JPT counters that Madden identifies no specific witnesses who are located in New York, and that any documents located in New York do not outweigh JPT's key witnesses and evidence in this district. Dkt. 19. Although JPT does not identify any specific documents, it appears that most of the documents related to the research and development and patent prosecution of JPT's *Mojo* patents are in Texas. Indeed, Bernardo completed the applications of the *Mojo* patents in Houston and the law firm that filed them is currently located in Bellaire, Texas. *Id*. at 10; Dkt. 19, Ex. 4.

Therefore, the documents relating to the allegedly infringing products are located in New York, whereas the documents relating to the infringed upon products are located in Houston. Under *In re Genentech, Inc.*, for purposes of considering this factor, the location of Madden's documents in New York is of greater importance than JPT's documentary evidence in Texas. 566 F.3d at 1345. Therefore, the court finds that this factor weighs in favor of transfer.

    2.    *The Availability of Compulsory Process to Secure Attendance of Witnesses*

"Pursuant to Rule 45(b)(2)(C) of the Federal Rules of Civil Procedure, a district court may compel attendance through the issuance of a subpoena at any place within the district of the court by which it is issued or at any place within 100 miles of where the deposition, trial, or hearing is being held." *Id*.

Madden contends that this court does not have subpoena power to compel several witnesses to testify including Madden's employees located in New York and the inventor of the *Mojo* patents, who resides in New Mexico. Dkt. 15 at 7–8. JPT argues that Madden could require their employee witnesses to attend trial even if they are not located within the subpoena power of this court. Dkt. 19

6

at 16 (citing *Pension Advisory Grp. Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011) (finding that a "motion to transfer under 28 U.S.C. § 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party")). Further, JPT points out that some of Madden's employee witnesses reside in Texas. Dkt. 19 at 16. More importantly, a substantial number of third-party witnesses reside in Texas, including: the original owner of the Bernardo brand that developed the *Mojo* patents, the attorneys responsible for the prosecution of the *Mojo* patents, the second and current owner of the *Mojo* patents, and former employees with knowledge about the process of filing and obtaining the *Mojo* patents. *Id*. at 15–16.

In sum, Madden has the ability to compel its own employees in New York to attend trial in this court. Neither this court nor the prospective transferee court would be able to secure the attendance of the inventor of the patent by subpoena. However, this court could secure the attendance of the third-party witnesses mentioned above, whereas the prospective transferee court could not. Therefore, the court finds that this factor weighs against transfer.

    3.     *Cost of Attendance for Willing Witnesses*

This factor considers the cost of attendance for those witnesses that are more than 100 miles away from the court. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004).

In this case, because the existing venue and proposed venue are more than 100 miles apart, the court must compare the relative distances required to travel to each venue. JPT asserts that there are ten individual witnesses that would have to travel 1,428 miles from Texas to New York, if

transferred. Dkt. 19 at 17. These witnesses appear to include Bernardo's current and former employees and the attorneys that prosecuted the *Mojo* patents. *Id*. Additionally, there are two key witnesses who reside in Oregon and New Mexico, both of which are significantly closer to Texas. *See id*. JPT's corporate representative witness in Oregon is 649 miles closer to Texas than New York and the inventor in New Mexico is 1,030 miles closer to Texas. *Id*. at 17; Dkt. 19. Ex. 10. Therefore, because it would be more costly and inconvenient to travel to New York for the majority of the witnesses, the court finds that this factor weighs against transfer.

    4.    *All Other Practical Concerns*

For this factor, courts consider whether transfer would delay already protracted litigation. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). Additionally, the courts consider the efficiency of the court system in handling several related lawsuits in the same district. *Acad., Ltd. v. A & J Mfg., LLC*, Civ.A. No. H-14-2043, 2014 WL 6679260, at *4 (S.D. Tex. Nov. 25, 2014) (Miller, J.) (granting a motion to transfer venue where there was pending litigation concerning the same patents in the proposed venue, reasoning that "it will be more efficient for the court system if the same court determines" the issue of infringement).

JPT points out that this action is related to the following two cases pending in this district: *JPT v. Express*, 4:15-CV-2873, originally assigned to Judge Rosenthal, later consolidated with *JPT v. Yellow Box Corp.*, 4:15-CV-02757, before Judge Gilmore. Dkt. 19 at 18. There appears to be a substantial overlap of witnesses and claim construction in all three of these cases. Dkt. 19 at 18. The related pending cases in this district involve the same plaintiff enforcing the same patents, but against different defendants accused of infringing upon the *Mojo* patents. *Id*. Accordingly, this factor weighs against transfer.

In sum, the court finds that none of the public interest factors weigh in favor of transfer, only one private interest factor weighs in favor of transfer, and three of the private interest factors weigh against transfer. Accordingly, Madden has failed to carry its burden to show good cause for a § 1404(a) transfer.

### III. Conclusion

Madden's motion to transfer venue to the United States District Court for the Eastern District of New York (Dkt. 15) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on June 28, 2016.

_____
Gray H. Miller
United States District Judge